BURL C. KIRK v. STATE OF NEBRASKA.

FILED MAY 3, 1919.    No. 20748.

1. **Homicide:** MURDER: INSTRUCTION: CONSPIRACY. On the trial of a defendant charged with the shooting and killing of a police officer, it is proper for the court to instruct the jury that they may find the defendant guilty if they find from the evidence beyond a reasonable doubt that the defendant, together with other persons with whom he stands charged, prior to the shooting, formed a common purpose to resist arrest, and that the shot which killed deceased was fired by one of the parties in pursuance of such common purpose or design, when the other necessary elements of the crime of murder are properly defined, and there is evidence to sustain such theory of the killing.

2. ——: ——: USE OF DEADLY WEAPON. When several persons are jointly engaged in resisting police officers who attempt, to place them under arrest, and in making such resistance use deadly weapons, each individual who assists in their employment is *held* to have intended the natural and probable consequences of their use.

3. **Criminal Law:** INSTRUCTIONS. Instructions to a jury must be taken as a whole. A phrase, a clause, or a sentence may not be segregated from the context in order to give it a different meaning from that intended by the trial court.

4. **Homicide:** INFORMATION: INSTRUCTIONS. An information charging murder in the first degree charges also murder in the second degree, and, when from the evidence it appears that defendant may have participated in the killing of deceased, but, if so, without

premeditation and deliberation, it is not error to instruct the jury on the lesser degree of the crime charged and permit a consideration of that crime.

ERROR to the district court for Douglas county: WILLIAM A. REDICK, JUDGE. *Affirmed.*

*Harry B. Fleharty* and *Baker & Ready,* for plaintiff in error.

*Willis E. Reed, Attorney-General,* and *George W. Ayres, contra.*

MORRISSEY, C. J.

Defendant prosecutes error from a conviction of murder in the second degree, under which he was sentenced to the penitentiary for a term of twenty years.

January 30, 1918, a jewelry store in the city of Omaha was entered by a band of robbers. The employees of the store were put in fear of their lives and compelled to stand by while the bandits gathered up a large quantity of jewelry and carried it away. The police officers of the city were soon informed of the robbery, and within a few hours several policemen and detectives went to the home of defendant, where, in a bedroom in the second story, they found defendant and four others, named Martin, Stone, Williams, and McKay. In this bedroom was also found the jewelry which had been stolen.

A police officer named Dolan entered the room, closely followed by another officer named Rooney. Dolan testified that he told the men they were under arrest and directed them to throw up their hands, and that there was immediate confusion. "McKay opened up with a shot. * * * Williams fell to the floor, threw himself right around the bed and started to shoot through the bed, and Stone by that time was over there, and he was shooting from the bed, and Kirk made his way over to the head of the bed. * * * Up to that time there was two lights. * * * One was on

the dresser here, while the other was kind of a reading light they used on the head of the bed, which Kirk immediately jerked out of the socket when he got as far as the head of the bed. * * * After the light was pulled out, then it seemed like all the men were shooting. * * * I saw him (Kirk) make a motion there, and I figured he was going after his gun.'' The officers returned the fire, and in the duel officer Rooney was shot and killed.

There is no direct proof that defendant fired the fatal shot. The court submitted the case to the jury on the theory that if defendant, together with his associates, prior to the shooting, had formed a common purpose and design to escape arrest, and, if necessary, to kill the officers intending to arrest them, and that deceased was killed by a shot fired by one of the parties in the furtherance of the common design, and that defendant was present, aiding and abetting, he would be guilty, whether he fired the shot or the shot was fired by one of his associates. This and other instructions in support of the theory which the trial court adopted are criticized. Clauses are singled out and construed, and, from the construction placed upon them by defendant's counsel, it is argued that the jury were confused and misled into returning a verdict that is contrary to law and does not find support in the evidence. Defendant was not a mere idle bystander, but there is positive evidence of his active participation in the resistance to the officers. True, no witness has sworn to his actually firing the shot, but the record shows that shortly after this store had been robbed defendant and his companions were in possession of the stolen goods in defendant's house; that after they had been directed to surrender by the peace officers defendant's companions opened fire upon the officers, and defendant destroyed one of the lights in the room. This act placed the peace officers at a disadvantage, in that they were standing in the light shed by another

lamp, while defendant and his companions were left in partial darkness. If defendant did not actually shoot, he did that which may have been more effective. He shielded the would-be assassins and exposed the officers of the law. They were all engaged in an effort to escape arrest, and in furtherance of that object were employing deadly weapons. The legal presumption is that each individual who assisted in their employment intended the natural and probable consequences of such use.

The instructions to the jury must be taken as a whole. A phrase, a clause, or a sentence may not be segregated from the context in order to give it a different meaning from that intended by the court. When these instructions are so considered, they appear to be clear and explicit and to safeguard every right of the defendant.

Complaint is made of instruction No. 14, defining the crime of murder in the second degree. As we understand the brief, it is not claimed that the instruction is improper in form, but rather that the evidence does not warrant the submission of this degree of homicide to the jury. While the evidence would, no doubt, sustain a conviction of murder in the first degree, there may be a question as to the proof of deliberation and premeditation, and it was entirely proper to submit the question of second degree murder for the consideration of the jury.

There is no error in the record, and the judgment is

AFFIRMED.

ROSE, J., not sitting.